UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

BRENDA VANREE,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

_____/

Case No.  1:16-CV-490

HON. ELLEN S. CARMODY

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act.  The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. (ECF No. 8.)

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo*

review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-three years of age as of her alleged disability onset date and fifty-five years of age on the date of the ALJ's decision. (PageID.50, 117.) She obtained a high school education and was previously employed as a hotel desk clerk, plastic injection mold operator, school bus driver, and as a general maintenance worker. (PageID.78, 109.) Plaintiff applied for benefits

on June 4, 2013, alleging disability beginning April 30, 2013, due to coronary artery and heart disease, as well as arthritis in her elbow with a missing radial head bone. (PageID.117, 174–177.) Plaintiff's application was denied on August 29, 2013, after which time she requested a hearing before an administrative law judge (ALJ). (PageID.130–133.) On July 31, 2014, Plaintiff appeared with her counsel before ALJ William Reamon for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.74–115.) In a written decision, dated October 30, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.50–73.) On March 21, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.22–27.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*. 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (noting that the ALJ determines RFC at step four, at which point the claimant bears the burden of proof).

The ALJ determined that Plaintiff's claim failed at step four. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of April 30, 2013. (PageID.55.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of right upper extremity posttraumatic osteoarthritis and cervical disc disease with radiculopathy. (PageID.55–56.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.56–60.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant is limited to only occasionally pushing and/or pulling with the right

> (dominant) upper extremity, and is limited to only occasional handling and fingering with the right hand. There are no left-sided limitations. She can occasionally climb ramps and stairs, ladders, ropes, or scaffolds, and has no limitation balancing, stooping, kneeling, crouching, or crawling. Additionally, the claimant would need to avoid environmental factors such as unprotected heights and dangerous moving machinery.

(PageID.60.) Continuing with the fourth step, the ALJ found that Plaintiff was capable of performing her past relevant work as a hotel desk clerk both as she performed it and as it was generally performed within the national economy. The ALJ concluded that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. In doing so, the ALJ relied in part on the testimony of the VE at the administrative hearing.[2] (PageID.111–112.)

Although not required to do so, the ALJ included an alternative step five finding that there were still other jobs existing in the national economy that Plaintiff could perform. The ALJ referenced the VE's testimony on the matter. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform other work as an information clerk (3,100 regional and 37,000 national positions), unskilled sales attendant (3,500 regional and 42,000 national positions), and office helper (4,000 regional and 48,000 national positions.) (PageID.111–112.) Accordingly, the ALJ concluded that Plaintiff was not disabled from April 30, 2013, the alleged disability onset date, through October 30, 2014, the date of decision. (PageID.68.)

---

[2] A VE's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Sec'y of Health & Human Servs.*, 935 F.2d 270, 1991 WL 100547 at *3 (6th Cir. 1991); *Rivera v. Barnhart*, 239 F. Supp. 2d 413, 421 (D. Del. 2002). However, the ALJ may use a vocational expert's services in determining whether a claimant can perform her past relevant work. 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"); *see, e.g.*, *Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

## DISCUSSION

### 1.   The ALJ's Past Relevant Work Determination.

The record demonstrates that Plaintiff worked as a hotel desk clerk from 2009 into 2012. Plaintiff argues that the ALJ erred in treating this work as past relevant work, because it did not rise to the level of substantial gainful activity (SGA).[3] (PageID.697–700, 728–730.) The Commissioner responds by arguing that Plaintiff is mistaken as to the proper method of calculating whether her earnings met the threshold for past relevant work.

"Generally, 'past relevant work' is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.' 20 C.F.R. § 404.1560(b)(1). 'Substantial gainful activity' is in turn defined as work that involves 'significant physical or mental activities' done for 'pay or profit.' 20 C.F.R. § 404.1572(a)-(b)." *Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395–96 (6th Cir. 2010); *see also* 20 C.F.R. § 404.1565(a). As an initial matter, there is much that the parties agree on. Plaintiff does not dispute, for example, that her work as a hotel clerk was done within the past 15 years and lasted long enough for her to learn how to do it. The Commissioner, in turn, admits that prior to 2012, Plaintiff's work as a hotel clerk did not reach threshold SGA levels. The parties further agree that in 2012, the threshold earnings level for SGA was $1,010 a month. The only issue, therefore, is whether Plaintiff's work as a hotel desk clerk in 2012 passed this threshold test for SGA. Under agency regulations, if Plaintiff's average monthly earnings exceeded this threshold amount, those earnings will "ordinarily show" that Plaintiff was engaged in substantial gainful activity. 20 C.F.R.

---

[3] The Court notes that this is an assertion contrary to that raised in Plaintiff's pre-hearing brief to the ALJ that was drafted with the assistance of counsel. There, Plaintiff explicitly stated that her work as a hotel clerk qualified as past relevant work. (PageID.271.) It wasn't until after the ALJ issued an unfavorable decision when Plaintiff, through counsel, alleged to the Appeals Council that this work lacked the requisite SGA. (PageID.274–275.)

§ 404.1574(b)(2). On the other hand, if Plaintiff's average earnings are below that threshold, the Commissioner "will generally consider" those earnings do not amount to substantial gainful activity and "will generally not consider other information in addition to [ ] earnings." 20 C.F.R. § 404.1574(b)(3).

The record shows that Plaintiff earned a total of $7,005.00 in 2012. (PageID.181.) The record further shows that of this total amount, in the first three months of the year Plaintiff earned $3,203.00 and in the second three months she earned 3,556.00. However, in the third three months she earned only $246.00. (PageID.184–186.) Accordingly, there was a significant decrease in the third quarter of 2012 from Plaintiff's earning levels from the previous six months. All this, again, is not in dispute. Where the parties differ, however, is in determining whether this amount qualifies as SGA. Plaintiff argues that, assuming facts in the Commissioner's favor, she only worked one month (July) of the third quarter. Accordingly, she argues her total earnings for the year should be divided by 7–the fewest possible months she worked. This would lead to an average monthly earning of $1,000.71 – roughly $10 under the threshold. (PageID.699–700.) The Commissioner responds that it would be "inappropriate" to include Plaintiff's earnings from the third quarter of 2012 in the calculation of average monthly earnings given the disparity in earnings between that quarter and the two previous quarters. She notes that Plaintiff's self professed hourly wage would indicate she worked less than four days in the third quarter. The Commissioner further depends on SSR 83-85, which notes that "when there is a significant change in work patterns or earnings, the earnings must be averaged over each separate period of work involved to determine if either effort was SGA." SSR 85-35, 1983 WL 31257, at *4 (Jan. 1, 1983); *see also* 20 C.F.R. §404a(c) ("If there is a significant change in your work pattern or earnings during the period of work

7

requiring evaluation, we will average your earnings over each separate period of work to determine if any of your work efforts were substantial gainful activity.") The Commissioner then argues that Plaintiff's earnings over the prior two quarters should be calculated separately from Plaintiff's earnings in the third quarter. Under this analysis Plaintiff's averaged monthly earnings reached $1,067.67 in the first three months and $1,185.33 in the second three months–well above the threshold amount. The Court agrees with the Commissioner that there appears to have been a "significant change" in Plaintiff's work pattern and earnings. As such "it would not be appropriate to average earnings over the entire period of work" since Plaintiff's work activity in the third quarter does not appear to be representative of her work in earlier periods. *See* SSR 85-35, 1983 31257, at *4 (Jan. 1, 1983). Plaintiff's attempt to distinguish this ruling is unpersuasive. She does not argue that during the third quarter of 2012 her condition worsened or she became further limited than she had previously been, rather she admitted that she had been let go when the hotel obtained new ownership. (PageID.90.) Her speculation that her hourly wage was incorrect and that she may have worked more hours during the third quarter is beside the point. Even assuming she is correct, there has still been a "significant change in work patterns or earnings." Thus, Plaintiff's situation appears to fall squarely within the agency ruling, one which directs the Commissioner to average Plaintiff's earnings over each separate period rather than the total period worked. Under that analysis, the Commissioner has demonstrated that Plaintiff's earnings as a hotel desk clerk exceeded the threshold amount for SGA. As such, the ALJ's determination that Plaintiff's work as a hotel desk clerk qualified as past relevant work is supported by substantial evidence. Plaintiff's

claim of error is denied.[4]

### 2. The ALJ's Evaluation of the Medical Opinions.

In her second claim of error, Plaintiff claims the ALJ's RFC determination for light work is unsupported by substantial evidence. Specifically, Plaintiff contends the ALJ erred in evaluating the medical opinions of record regarding her ability to lift and carry with her right upper extremity. The Court agrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1);

---

[4] The Court notes that the ALJ's alternative step five finding is irrelevant to the resolution of this claim as, considering Plaintiff's age, education, work experience and RFC, she would be found disabled under the medical-vocational guidelines if she could not return to her past relevant work.

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir., Jan. 19, 2007).

The gist of Plaintiff's claim is that the ALJ's RFC that allows for Plaintiff to lift twenty pounds occasionally and ten pounds frequently is unsupported by substantial evidence. She

depends on the findings and opinions of several care providers that have imposed more restrictive limitations on her ability to lift and carry due to her right upper extremity impairment. Plaintiff relies, for example, on the findings of Dr. June Hillelson, DO, a consultative examiner, who remarked on August 13, 2013, that Plaintiff "should be able to lift 5 pounds with that [upper right] extremity and lift normally with the other extremity." Dr. Hillelson also opined that Plaintiff could only carry, push, and pull five pound weights with her right upper extremity  (PageID.392, 400.) Plaintiff also points to the a June 19, 2014, RFC questionnaire that was completed by Ms. Barbara Rounds, an occupational therapist.  Ms Rounds indicated Plaintiff could only occasionally carry ten pounds in a competitive work situation.  She could further only lift ten pound weights at waist level, five pound weights from floor to waist level, and only rarely lift five pound weights from waist to overhead.  (PageID.643.)  Plaintiff further notes that on July 11, 2014, Dr. John Dykstra indicated he agreed with Ms. Rounds' assessment.[5]  (PageID.660.)  Finally, Plaintiff relies on a March 17, 2014, opinion from Ms. Traci Colvin, a physical therapist, who stated that Plaintiff could occasionally lift up to ten pounds and never lift up to twenty.  (PageID.598.)  At bottom, Plaintiff claims the ALJ erred by rejecting all these opinions and instead relying on the opinion of the state agency physician.

        The Commissioner responds by arguing the ALJ gave each opinion proper consideration.  Opinions from therapists, the Commissioner correctly notes, are not those of an acceptable medical source.  She further argues that the ALJ properly discounted the opinion of Dr. Hillelson as being inconsistent with the findings of Dr. Paff, an orthopedic surgeon.  Finally, the Commissioner contends that Dr. Dykstra's act of circling an answer indicating he agreed with Ms.

---

[5] Plaintiff argues that this indication should be accorded controlling weight under the treating physician analysis.

Rounds' opinion cannot constitute a medical opinion for purposes of the treating physician rule.

The ALJ's basis for rejecting these opinions depends in large part on the notes from orthopedist Brian Paff. The ALJ noted that the doctor refused to perform elbow replacement surgery, given Plaintiff's young age, and had also noted that Plaintiff admitted to continuing to lift heavy loads. Similarly, the ALJ dismissed the five pound lifting restriction from Dr. Hillelson by noting that the "mostly benign examination by [Dr. Paff] strong suggest that claimant's right upper extremity was functioning at a significantly healthier level than Dr. Hillelson's restrictions would indicate." (PageID.67.) A review of the evidence of record, however, does not support the ALJ's conclusion that Plaintiff's examinations were "mostly benign." As such, the ALJ's evaluation of the medical opinions is not supported by substantial evidence.

The record shows that roughly eighteen years before her alleged disability onset date, Plaintiff broke the radial head in her right elbow. She underwent two surgeries for this, the first to remove the radial head, the second to move some ligaments. (PageID.359, 361.) In April 2013, the month of her alleged onset date, it was noted that Plaintiff had chronic bilateral hand numbness, worsening headaches, and a stiff neck. (PageID.349.) At her exam with Dr. Hillelson, it was noted that while Plaintiff had normal extension of her elbow, there was a thirty degree angular lateral deviation at the elbow joint. (PageID.392.) On November 14, 2013, Plaintiff visited with Dr. Paff complaining of progressively worsening pain as well as numbness and tingling in her right hand. (PageID.421.) Dr. Paff noted that he was treating Plaintiff for right elbow osteoarthritis. He further noted that Plaintiff had failed to respond to conservative measures including over the counter medication, activity modification, and steroid injection. After an examination, it was noted that Plaintiff had localized tenderness over the radiocapitellar joint as well as some localized crepitus,

but no pain on provocative testing of the elbow. (PageID.422.) An x-ray taken the same day found degenerative changes around several joints in her right elbow. (PageID.419.) Dr. Paff noted that "there are not a lot of good options for patients that are young as she is." (PageID.423.) He noted that he would not recommend a total elbow replacement as "[s]he has too high of demands on her elbow at this time though to consider anything like that." (PageID.423.) Instead, he recommended an additional injection under ultrasound guidance. (PageID.418.)

On December 3, 2013, Plaintiff underwent electrodiagnostic testing due to the paresthesias in her right hand at the request of Dr. Paff for(PageID.426.) Dr. Kane-Smart, the examining physician, noted that Plaintiff reported being told by Dr. Paff that her right elbow "was junk." (PageID.426.) Plaintiff further stated that the numbness and tingling in her right hand stretched to her forearm, elbow, bicep, and into the shoulder. Plaintiff felt that her right arm was weak, and also reported neck pain. (PageID.426.) A physical examination summary noted that a Spurling's test caused neck and trapezius pain when performed to the right. Range of motion of Plaintiff's right elbow had "dramatically decreased supination, clunk with extension." A Tinel's test over the ulnar nerve caused paresthesias in Plaintiff's fingers. The same test on Plaintiff's carpal tunnel caused paresthesias in the proximal forearm to the elbow. (PageID.428.) Dr. Kane-Smart summarized the results of the EMG test as follows: "There is electrodiagnostic evidence of a right ulnar neuropathy without denervation. There is also ongoing evidence of a chronic right C8 radiculopathy without denervation. There is no electrodiagnostic evidence of a median mononeuropathy at the wrist nor a more proximal median mononeuropathy. No evidence [of a] peripheral neuropathy affecting the right upper extremity." (PageID.428.)

Later that month, on December 12, 2013, Plaintiff again met with Dr. Paff. She

stated she had only received one week of relief from the injection she received at the last appointment. (PageID.430.) While there was no tenderness, swelling, or deformities of the right upper arm, as well as no pain on provocative testing of the elbow, there was localized tenderness over the radiocapitellar joint and pain with resisted supination. (PageID.430.) There was localized crepitus over a joint in her wrist. (PageID.430.) The doctor again noted that Plaintiff was too young for total elbow replacement. He noted that "[w]ith the job in fast food that the patient is still actively working using her arm for relatively heavy loads I do not think that she is a good candidate at this time." (PageID.433.) But the doctor did not define what the relatively heavy loads were. Moreover, while Plaintiff admitted to lifting various items at her two jobs, it was noted that doing so exacerbated her arm pain. (PageID.599.) Plaintiff later reported she began clearing tables and filling condiment bottles due to her poor tolerance for the demands of the job. (PageID.647.) Finally, at the administrative hearing, the ALJ remarked to Plaintiff that it "[l]ooks like your right arm is rather withered, compared to your left." (PageID.83.)

The only medical opinion consistent with the RFC's lifting abilities comes from the agency medical reviewer, Dr. Jacob Weintraub. (PageID.123–125.) Though he found Dr. Hillelson's opinion consistent with the findings of her examination, he nonetheless found Plaintiff could occasionally lift and carry twenty pound weights and frequently lift and carry ten pound weights. (PageID.123.) "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I)); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

14

Here, the ALJ found that Dr. Weintraub's opinion was entitled to significant weight as it was consistent with the objective medical evidence. As the above discussion indicates, however, the ALJ's conclusion that the RFC is consistent with the evidence of record is not supported by substantial evidence. Accordingly, this matter must be remanded to the Commissioner for further action. On remand, the Commissioner is directed to reassess Plaintiff's lifting and carrying abilities with regards to Plainitff's right upper extremity.

### 3.     Remand is Appropriate.

Plaintiff asks for an award of benefits. As detailed herein, the ALJ's conclusion that Plaintiff was not disabled is not supported by substantial evidence. While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist compelling evidence that Plaintiff is disabled. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court, concludes, therefore, that the Commissioner's decision must be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g). This matter is remanded for further factual findings, including but not necessarily limited to, reconsideration of Plaintiff's past relevant work.

A separate judgment shall issue.


Date:  March 27, 2017                                          /s/ Ellen S. Carmody
                                                                                                   ELLEN S. CARMODY
                                                                                                   United States Magistrate Judge